UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAROLD AUTRY ANDERSON,

Plaintiff,

v.                                                  Case No.: 8:07-CV-00993-JDW-MAP

CITY OF TAMPA, et al.

Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendant Peter J. Bucher's Motion for Summary Judgment (Dkt. 20).[1] Upon consideration, Defendant's motion is GRANTED.

### Background

In this excessive force action brought pursuant to 42 U.S.C. § 1983, Plaintiff Harold Autry Anderson ("Anderson") alleges that Defendant Peter Bucher ("Officer Bucher"), a Tampa Police Department Officer, used excessive force during Anderson's arrest for driving under the influence of alcohol (DUI) following a traffic stop.

On April 23, 2006, Officer Bucher pulled Anderson, a 65-year old man, over after observing him strike or nearly strike a construction barrier with his vehicle and cross over lane markers. (Dkt. 24, Bucher Aff. ¶ 12; Dkt. 20-6, Anderson Depo. at 16).[2] Anderson exited his vehicle and Officer

---

[1] Plaintiff's claims against Defendant City of Tampa have been dismissed pursuant to settlement. (Dkt. 32).

[2] Plaintiff's Amended Complaint alleges that "Bucher activated his emergency lights and Anderson immediately used his turn signal in pulling over and brought the vehicle to a stop." (Dkt. 6, Am. Compl. ¶ 14). During his deposition, however, Anderson testified that he stopped on his own to walk around because he was feeling tired and that he only noticed Officer Bucher after he stopped and exited his car. (Anderson Depo. at 14). The police video taken during the stop reflects that Anderson was pulled over. (Dkt. 26, video of arrest). In the absence of evidence that a video has been doctored or altered or a contention that it fails to depict what actually

Bucher instructed him to get back in. (Dkt. 26; Anderson Depo. at 14). Officer Bucher then approached Anderson's vehicle and noticed the smell of alcohol and that Anderson had glassy eyes. (Bucher Aff. ¶ 15). Anderson admitted that he had been drinking. (Dkt. 26; Anderson Depo. at 16). Officer Bucher instructed Anderson to exit his vehicle and conducted a horizontal gaze nystagmus (HGN) test but Anderson did not successfully complete the test. Anderson refused to undergo field sobriety testing and was arrested for DUI. (Dkt. 26; Bucher Aff. ¶ 16; Bucher Depo. at 27; Anderson Depo. at 20, 21-22).

During the arrest, Officer Bucher performed a takedown, resulting in Anderson being brought to the pavement where he was handcuffed. (Anderson Depo. at 26; Bucher Aff. ¶¶ 18-20). The parties offer different accounts of the events that precipitated the takedown.[3] After Anderson's refusal to undergo field sobriety testing, Officer Bucher ordered Anderson to put his hands behind his back and announced that he was being arrested for DUI. (Dkt. 26). According to Officer Bucher, when he tried to handcuff Anderson, Anderson jerked away by leaning forward, flailing from side to side and moving his arms forward. Officer Bucher contends that the takedown was necessary because Anderson was physically resisting arrest. (Anderson Depo. at 20-24, 62-65, 76; Bucher Aff. ¶¶ 23-25). Although unclear, it appears that Anderson's account is that he was trying to comply and "was putting them behind [his] back" but experienced difficulty due to a "bad shoulder" and told Officer Bucher, prior to being taken down, that he was not trying to fight him and had a bad shoulder. (Anderson Depo. at 23, 25, 42; Dkt. 26). Anderson contends that Officer Bucher pulled

---

happened, the facts are to be viewed as depicted by the videotape. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). Accordingly, it is taken as true that Anderson stopped as a result of being pulled over by Officer Bucher. However, whether Anderson stopped on his own or was pulled over is not material to the resolution of Anderson's excessive force claim, as the claim arises from the events that took place subsequent to the stop.

[3] These events took place out of the view of the camera and are not seen on the video of the arrest.

his arms out and kicked both feet out from under him. (Anderson Depo. at 22-23, 25). Officer Bucher denies that he kicked Anderson's feet out from under him and contends that he performed the takedown using only his arms. According to Bucher, since Anderson was already leaning forward, he "used the forward direction of Mr. Anderson's body and controlled him to the ground." (Bucher Depo. at 76; Bucher Aff. ¶¶ 18-19). Officer Bucher also contends that he did not hear Anderson say that he was not resisting arrest and had a bad shoulder until after Anderson was already on the ground and handcuffed. (Anderson Depo. at 28). For purposes of summary judgment, Anderson's version of the facts are taken as true. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

As a result of landing on the pavement, Anderson's knees and the left side of his face were scraped and bleeding. (Anderson Depo. at 28; Bucher Depo. at 46-47; Bucher Aff. ¶ 21). Anderson contends that his knees remain scarred and that "when I wake up, it takes a while for them to get unstiffed." (Anderson Depo. at 28, 48). An MRI taken after the incident resulted in an impression of "AC joint hypertrophy with moderate rotator cuff impingement and supraspinatis tendinosis without evidence of rotator cuff tear" in his right shoulder. (Dkt. 30-8). With regard to his shoulders, Anderson contends that "I can't lift them up as high as I used to. If I do, I can't keep them up very long. I can't scratch my back the way I'd like to." (Anderson Depo. at 48). However, Anderson began having minor pain in his shoulders two or three weeks prior to the arrest but had not sought treatment by a doctor. (Anderson Depo. at 43-45).

### *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, supra.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

### *Discussion*

Officer Bucher contends that he is entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow governmental officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (quoting *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002)).

Officer Bucher was acting within the scope of his discretionary authority in carrying out the arrest of Anderson. Accordingly, Anderson bears the burden of overcoming the defense of qualified immunity. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). To determine whether qualified immunity applies, a threshold question must be resolved: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?' " *Scott*, 127 S.Ct. at 1774 (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001). "If, and only if, the court finds a violation of a constitutional right," does the court ask whether the right was clearly established at the time of the violation. *Id.*

Plaintiff has alleged that Officer Bucher violated his Fourth Amendment right to be free from the use of excessive force during the course of an arrest. *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006); *see also* U.S. Const. amend. IV. In determining whether the amount of force used by Officer Bucher was excessive, the Court evaluates "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Beshers*, 495 F.3d at 1266 (internal quotations omitted). To assess whether the force used was reasonable, the Court examines: (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004).

5

The need for application of force is measured by weighing "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Davis*, 451 F.3d at 767 (internal quotations omitted); *Draper*, 369 F.3d at 1278 n.13. Careful attention must be given to the facts and circumstances of each particular case. *Graham v. Connor*, 490 U.S. 386, 396 (1989). In addition, an officer's actions are viewed from the "'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight' and 'must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.'" *Beshers*, 495 F.3d at 1266 (quoting *Graham*, 490 U.S. at 396-97).

Need for force:

In evaluating the need for force in the instant case, while the crime with which Anderson was charged, DUI, is a misdemeanor, Officer Bucher avers that he was not able to handcuff Anderson because Anderson was leaning forward, flailing from side to side and moving his arms forward. (Bucher Aff. Ex. A; Bucher Depo. 38, 40). In addition, Ben Miller, a Florida Highway Patrol trooper present at the scene, testified that Anderson was physically resisting being handcuffed by moving his arms forward. (Dkt. 30-10, Miller Depo. at 48, 50). Anderson does not dispute that he was making the movements described by Officer Bucher, but contends that he does not know whether he moved or not. (Anderson Depo. at 25).

Even viewing the facts in the light most favorable to Anderson, a reasonable police officer could have perceived that Anderson was resisting arrest as he was not compliant with Officer Bucher's directive to put his hands behind his back. In addition, Anderson has not presented any

evidence to contradict Officer Bucher's and Trooper Miller's testimony that he was moving his arms forward and flailing. *Beshers*, 495 F.3d at 1266. Even if Anderson told Bucher that he had a bad shoulder prior to the takedown, a reasonable officer on the scene making "split-second judgments - in circumstances that are tense, uncertain, and rapidly involving" may not have heard him or understood this to be the reason for Anderson's movements and failure to place his hands all the way behind his back until after Anderson was already on the ground. *Beshers*, 495 F.3d at 1266 (quoting *Graham*, 490 U.S. at 397). That Officer Bucher's perception may have been inaccurate does not preclude the defense of qualified immunity. *Saucier*, 533 U.S. at 205. Accordingly, Officer Bucher was entitled to use some degree of force to secure Anderson, and the first factor in the excessive force calculus, the need for force, weighs in favor of Officer Bucher. It is well established that "some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003).

Relationship between the need for force and the amount of force used:

"[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case." *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000). The Eleventh Circuit has repeatedly found that the use of force involving some measure of rough contact during an arrest may be appropriate. *See id.* at 1258 n.4 (officer grabbed plaintiff, shoved him against a vehicle, pushed his knee into plaintiff's back, searched his groin in an uncomfortable manner, and handcuffed him); *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (two officers "slammed" suspect against wall, kicked his legs apart, required him to raise his arms, and pulled his wallet from his pants); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993) (officer placed

plaintiff in chokehold and handcuffed him, took him outside, and pushed him against a wall when he continued speaking after being told to "shut up"). Consistent with these cases, a police officer generally enjoys qualified immunity with respect to force used on an arrestee before the arrestee is fully secured. *Lee*, 284 F.3d at 1199-1200; *see also Durruthy*, 351 F.3d at 1094 (noting that plaintiff had not been restrained when the force was applied). "[T]he application of de minimus force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin*, 207 F.3d at 1257. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment." *Saucier*, 533 U.S. at 209 (citations omitted).

In this case, even if unnecessary, the force used and the resulting injury were de minimus. *Jones*, 121 F.3d at 1460 (although use of force may have been unnecessary, officers were entitled to qualified immunity because force used and injury inflicted were minor); *Durruthy*, 351 F.3d at 1094 ("Here, even if the force applied by Pastor in effecting the arrest - forcing Durruthy down to the ground and placing him in handcuffs - was unnecessary, plainly it was not unlawful. The amount of force used was minimal."). Once Anderson was handcuffed, Officer Bucher did not apply further force, despite the fact that Anderson continued to verbally berate Officer Bucher, including calling him an "asshole," "cocksucker," and saying "fuck you." (Anderson Depo. at 27; Dkt. 26).

<u>Extent of injury:</u>

The evidence reflects only minor injury to Anderson's cheek and knees, which Anderson concedes were no longer bleeding and produced only "burning sensations" by the time he was released from jail approximately one hour after arrival. (Anderson Depo. at 32, 34, 48). Anderson refused medical attention by the nurse at the jail because "I wanted my lawyer and my doctor to see

me exactly the way I was." (Anderson Depo. at 33-35; Bucher Depo. at 81-83).[4] The evidence does not reflect a severe injury to Anderson's shoulder resulting from the incident.[5] Indeed, Anderson alleges as part of his damages "aggravation of a previously existing condition." (Dkt. 8, ¶ 45). *Durruthy*, 351 F.3d at 1095 (aggravation of a pre-existing shoulder injury does not turn reasonable force into excessive force). Therefore, the third factor, the extent of the injury, weighs in favor of Officer Bucher.

Officer Bucher was entitled to use some force in securing Anderson, as Anderson was not compliant with Bucher's attempt to handcuff and secure Anderson. It cannot be said, therefore, that the minimal amount of force used by Officer Bucher was disproportionate to the need for force. The injury Anderson complains of was minor. Accordingly, Officer Bucher's use of force did not violate Anderson's Fourth Amendment right to be free from excessive force. Accordingly, there is no need to address whether the right was clearly established. *Scott*, 127 S.Ct. at 1774; *Saucier*, 533 U.S. at 201. Officer Bucher is protected by qualified immunity and entitled to summary judgment.[6]

Accordingly, it is **ORDERED AND ADJUDGED:**

---

[4] Officer Bucher contends that he called an ambulance to the scene prior to transporting Anderson to the jail but that the ambulance failed to arrive. (Bucher Depo. at 81-84).

[5] The MRI of Anderson's right shoulder revealed "AC joint hypertrophy with moderate rotator cuff impingement" and "suprapinatus tendinosis without evidence of rotator cuff tear." (Dkt. 30, Exh. D)

[6] Anderson's Amended Complaint also alleges a violation of his Fourteenth Amendment rights. (Dkt. 6). Officer Bucher moves for summary judgment on Anderson's Fourteenth Amendment claim "since the Plaintiff's claims are appropriately categorized under the Fourth and not the Fourteenth Amendment." (Dkt. 20, p. 7). Anderson's response does not address Officer Bucher's assertion that his Fourteenth Amendment claim is inappropriately categorized. Officer Bucher is correct. "Where, as here, the excessive force claim arises in the context of an arrest . . ., it is most properly characterized as one invoking the protections of the Fourth Amendment . . ." *Graham*, 490 U.S. at 394. "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* Accordingly, Anderson's claim has been properly analyzed under the Fourth rather than the Fourteenth Amendment, and summary judgment is also granted to Officer Bucher on Anderson's Fourteenth Amendment claim.

1)  Defendant Peter J. Bucher's Motion for Summary Judgment (Dkt. 20) is **GRANTED**.

2)  Any other pending motions are denied as moot.[7]

3)  The Clerk is directed to enter judgment in favor of Officer Bucher and close this case.

**DONE AND ORDERED** in chambers this 30th day of April, 2008.

JAMES D. WHITTEMORE
United States District Judge

copies to: counsel of record

---

[7] Officer Bucher has moved to strike the affidavit of George Kirkman, Ph.D submitted by Anderson in opposition to Officer Bucher's motion for summary judgment. (Dkt. 34). As summary judgment is granted to Officer Bucher notwithstanding the affidavit, Officer Bucher's motion to strike is denied as moot.